UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NELIDA A. HERNANDEZ, | Case No. 1:19-cv-01621-HBK |
| Plaintiff, | OPINION AND ORDER TO REMAND CASE TO COMMISSIONER[2] |
| v. | (Doc. No. 19) |
| KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

Nelida A. Hernandez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income under the Social Security Act. (Doc. No. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 19, 27, 30). For the reasons stated , the Court orders this matter REMANDED for further administrative proceedings.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit.

[2] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. §636(c)(1). (Doc. No. 32).

## I.     JURISDICTION

Plaintiff filed for supplemental security income on March 8, 2012. (AR 485-93). Benefits were awarded as of February 24, 2012, in a decision dated June 20, 2012. (AR 374-92). On May 16, 2016, after a periodic review, it was determined that Plaintiff was no longer disabled as of May 1, 2016. (AR 394-96). After a hearing by a state agency hearing office, the decision was upheld on November 18, 2016. (AR 406-19). Plaintiff requested further review and appeared before Administrative Law Judge Joyce Frost-Wolf ("ALJ") on July 6, 2018. (AR 69-105). Plaintiff was represented by counsel and testified at the hearing. (*Id.*). On October 12, 2018, the ALJ issued an unfavorable decision (AR 46-68), and on September 6, 2019, the Appeals Council denied review (AR 4-10). The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

## II.    BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 34 years old at the time of the hearing. (AR 76). She testified that she graduated from high school but received help in the classroom every day. (AR 77-78, 83-84). She lives with her mother, father, and sister. (AR 77). Plaintiff has no work history aside from a temporary seasonal position at Macy's. (AR 78-79). Plaintiff testified that she has back pain, gastritis, and she is easily frustrated when stressed. (AR 85-86). She reported that she got her driver's license after taking the test three times, gets reminders to take her medications, and needs help with household chores. (AR 88-90). Plaintiff's sister testified that it is hard for Plaintiff to follow directions, she is easily frustrated, she always needed help with her homework and was in special education classes when she was in school, she cannot remember where to put clothes away, she leaves things on the stove because she gets distracted, and she never leaves the house alone. (AR 93-102).

## III.   STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is

governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is harmless.  *Id*.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**IV.   SEQUENTIAL EVALUATION PROCESS**

The Commissioner has established a multi-step sequential evaluation process for determining whether a person's disability has ended.  20 C.F.R. §§ 404.1594(f), 416.994(b)(5).  This multi-step continuing disability review process is similar to the five-step sequential evaluation process used to evaluate initial claims, with additional attention as to whether there has been medical improvement.  Compare 20 C.F.R. § 404.1520 and 416.920 with § 404.1594(f) and 416.994(b)(5), respectively.  A claimant is disabled only if his impairment is "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Determination of whether a person's eligibility has ended for disability benefits involves

an eight-step process under Title II and a seven-step process under Title XVI. 20 C.F.R. §§ 404.1594(f)(1)-(8), 416.994(b)(5)(i)-(vii). The Title XVI process is identical to the Title II process, except for the consideration of substantial gainful activity at the beginning of the disability insurance process and not during the Title XVI process. These otherwise identical steps are broadly summarized as follows.

The first step determines whether the claimant has an impairment or combination of impairments that meet or equal the severity of listed impairments set forth at 20 C.F.R. pt. 404, subpt. P, app. 1. 20 C.F.R. §§ 416.920(d), 416.994(b)(5)(i). If the impairment does not equal a listed impairment, the second step addresses whether there has been medical improvement in the claimant's condition. 20 C.F.R. § 416.994(b)(5)(ii). Medical improvement is "any decrease in the medical severity" of the impairment that was present at the time the individual was disabled or continued to be disabled. 20 C.F.R. § 416.994(b)(1)(i). If there has been medical improvement, at step three, a determination is made whether such improvement is related to the claimant's ability to perform work—that is, whether there has been an increase in the individual's residual functional capacity. 20 C.F.R. § 416.994(b)(iii). If the answer to step three is yes, the Commissioner skips to step five and inquires whether all of the claimant's current impairments in combination are severe.

If there has been no medical improvement or medical improvement is not related to the claimant's ability to work, the evaluation proceeds to step four. At step four, consideration is given to whether the case meets any of the special exceptions to medical improvement for determining that disability has ceased. 20 C.F.R. § 416.994(b)(5)(iv). At step five, if medical improvement is shown to be related to the claimant's ability to work, a determination will be made to assess whether the claimant's current impairments in combination are severe—that is, whether they impose more than a minimal limitation on his physical or mental ability to perform basic work activities. 20 C.F.R. § 416.994(b)(5)(v). If the answer to that inquiry is yes, at step six the ALJ must determine whether the claimant can perform past relevant work. 20 C.F.R. §§ 416.994(b)(5)(vi), 416.920(e); SSR 82-61, available at 1982 WL 31387.

Finally, at step seven, if the claimant cannot perform past relevant work, a limited burden

of production shifts to the Commissioner to prove there is alternative work in the national economy that the claimant can perform given his age, education, work experience, and residual functional capacity. 20 C.F.R. § 416.994(b)(5)(vii). If the claimant cannot perform a significant number of other jobs, he remains disabled despite medical improvement; if, however, he can perform a significant number of other jobs, disability ceases. *Id*.

Prior to the final step, the burden to prove disability and continuing entitlement to disability benefits is on the claimant. 20 C.F.R. § 416.994; *cf. Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). The Commissioner must consider all evidence without regard to prior findings and there must be substantial evidence that medical improvement has occurred. 42 U.S.C. §§ 423(f)(1), 1382c(a)(4). The Commissioner views the evidence in a continuing disability review from a neutral perspective, without any initial inference as to the existence of disability being drawn from a prior finding of disability. 42 U.S.C. §§ 423(f)(1), 1382c(a)(4). If the analysis proceeds to step seven, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." *Cf. Bowen v. Yuckert*, 482 U.S. at 146 n. 5; and *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012) (applying the same burden at the initial disability determination).

## V. ALJ'S FINDINGS

Initially, the ALJ found that Plaintiff had the following severe impairments at the time of the comparison point decision (CPD)[3] on June 20, 2012: history of hiatal hernia, gastritis, duodenitis, and reflux disease. (AR 50). The ALJ additionally noted that Plaintiff did not develop any additional impairments after the CPD through May 1, 2016; thus, Plaintiff's current impairments are the same as the CPD impairments. At step one, the ALJ found that since May 1, 2016, Plaintiff has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App'x 1. (AR 51). At step two, the ALJ found medical improvement occurred as of May 1, 2016. (AR 51). At step three, the ALJ found Plaintiff's medical improvement was related to her ability to

---

[3] As noted by the ALJ, the comparison point decision is the most recent favorable medical decision finding Plaintiff was disabled. Here, that determination was dated June 20, 2012. (AR 50).

work. (AR 51). Thus, the ALJ skipped to step five and found that beginning on May 1, 2016, Plaintiff has the severe impairment of Borderline Intellectual Functioning. (AR 52). At step six, the ALJ found that, beginning on May 1, 2016, Plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following nonexertional limitation: she is limited to simple, repetitive tasks. (AR 52). The ALJ then determined that Plaintiff has no past relevant work. (AR 60). Finally, at step seven, the ALJ found that beginning on May 1, 2016, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform including sales attendant, ticket taker, and garment sorter. (AR 60-61). On that basis, the ALJ concluded that Plaintiff's disability ended on May 1, 2016, and Plaintiff has not become disabled again since that date. (AR 61).

## VI.   ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. (Doc. No. 1). Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed the medical opinion evidence;
2. Whether the ALJ properly considered Plaintiff's subjective complaints;
3. Whether the ALJ properly considered the lay witness testimony;
4. Whether the ALJ erred at step two; and
5. Whether the ALJ erred at step three.

(Doc. No. 19 at 14-30).

## VII.   DISCUSSION

### A. Medical Opinions

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than

6

1 an examining physician's opinion, and an examining physician's opinion carries more weight

2 than a reviewing physician's opinion. *Id*. If a treating or examining physician's opinion is

3 uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are

4 supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

5 Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's

6 opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported

7 by substantial evidence." *Id*. (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

8 "However, the ALJ need not accept the opinion of any physician, including a treating physician,

9 if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v.*

10 *Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation

11 omitted).

12 On June 18, 2016 and July 16, 2016, psychologist David Bruce Rose, Ph.D conducted a

13 psychological evaluation of Plaintiff. (AR 943-46). The evaluation included a clinical interview,

14 a Stanford Binet Intelligence Scales Assessment of Plaintiff, and a Vineland Adaptive Behavior

15 Scales Survey Interview of Plaintiff and her mother. (*Id*.) The test results described Plaintiff's

16 intellectual ability as consistent across all domains and in the mildly impaired range, "which

17 would meet the DSM intellectual functioning criteria for mild intellectual disability." (AR 944).

18 In addition,

> [w]ith the exception of the Domestic Subdomain, both [Plaintiff] and her mother described [Plaintiff's] adaptive behavior in the low range for all subdomains. . . . Taken together, the results of the Vineland II described [Plaintiff] with **marked differences** from other adults in social and communicative behavior. She showed limited capacity for relationships and frequently misperceives social cues. While she can care for her personal needs, she is not fully independent when she performs household tasks. Neither is she capable of independent employment where even average conceptual or communication skills are required. She will need considerable support from co-workers, supervisors, job-coaches, and others to manage typical responsibilities involved in employment. For example, while she attended school to study cosmetology, she does not demonstrate the social skills or cognitive flexibility to perform the duties required of a cosmetologist.

27 (AR 945)(emphasis added). Based on the results of the evaluation, Dr. Rose diagnosed Plaintiff

28 with intellectual disability, moderate, and made several "recommendations," including: (1)

Plaintiff "would benefit from employment" and should receive vocational counseling; (2) Plaintiff's intellectual disability "may be the result of physiological factors" so she should receive a full physical examination and genetic testing; and (3) it might be difficult for Plaintiff to receive "appropriate services" because her intellectual disability is mild. (AR 945-46).

The ALJ gave "some weight" to Dr. Rose's evaluation "in that it supports [Plaintiff] being able to work with vocational training on some level. Furthermore, it supports [the] conclusion that [Plaintiff] would be limited to simple, repetitive tasks such as those typical of unskilled work activity." (AR 58). First, Plaintiff argues the ALJ erred by affording "great weight" to one-time examining psychiatric examiner, Dr. Ekram Michiel, as opposed to the Dr. Rose's opinion based on a "two-day" evaluation that included intellectual and adaptive testing. (Doc. No. 19 at 15). Defendant responds at length that the ALJ properly afforded great weight to Dr. Michiel's examining opinion, some weight to Dr. Steven Swanson's consultative examining opinion,[4] and great weight to the state agency psychological reviewing opinions. (Doc. No. 27 at 12-16; AR 54-57). However, while the ALJ may consider the frequency of examinations when weighing the medical opinions, where, as here, the examining provider's opinion is contradicted by medical evidence, the opinion may still be rejected if the ALJ provides specific and legitimate reasons supported by substantial evidence in the record. *See Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir.1995). Thus, the salient question before the Court is whether the ALJ offered the requisite reasons to reject Dr. Rose's examining opinion.

Next, Plaintiff argues that the ALJ failed to provide the "specific and legitimate" reasons for rejecting Dr. Rose's opinion and "erroneously mischaracterizes Dr. Rose's report." (Doc. No. 19 at 15-18). As an initial matter, the Court finds that Plaintiff's argument is somewhat misplaced as the ALJ does not "reject" or explicitly give less weight to Dr. Rose's report. (*See* AR 57-58). However, Plaintiff correctly notes that when considering the medical opinion

---

[4] The ALJ acknowledges that Dr. Swanson's evaluation was "conducted in 2010, which is many years prior to the period during which [Plaintiff's] current functioning requires evaluation for purposes of a continuing disability determination." (AR 55). In general, "[m]edical opinions that predate the alleged onset of disability are of limited relevance." *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008).

8

evidence, the ALJ must do more than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain whey they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (a court "cannot substitute [the court's] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions. Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725.

Here, the ALJ accurately summarizes the entirety of Dr. Rose's clinical findings; however, the ALJ fails to reconcile the serious limitations opined by Dr. Rose with the ALJ's conclusory finding that the opinion should be given "some weight" because it supports the RFC finding that Plaintiff would be limited to simple, repetitive tasks. In particular, Dr. Rose opined that Plaintiff had "marked differences from other adults in social and communicative behavior. She showed limited capacity for relationships and frequently misperceives social cues. While she can care for her personal needs, she is not fully independent when she performs household tasks. Neither is she capable of independent employment where even average conceptual or communication skills are required." (AR 945). The ALJ failed to either provide specific and legitimate reasons to reject these social and communicative limitations or incorporate them into the assessed RFC. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (failure to address medical opinion was reversible error); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006) ("an ALJ is not free to disregard properly supported limitations"). This constitutes error.

Defendant cites unpublished case law in an attempt to support the ALJ's finding that Dr. Rose's opinion "supports a finding that Plaintiff can work with vocational training on some level." (Doc. No. 27 at 17). However, regardless of whether the ALJ found Dr. Rose's recommendation that Plaintiff could engage in vocational training supported a finding that she could perform simple, unskilled work, as discussed in detail above, the ALJ failed to properly consider the portions of Dr. Rose's opinion that addressed Plaintiff's interpersonal limitations,

including that she is not capable of independent employment "where even average conceptual or communication skills are required." (AR 945). Defendant also argues that this limitation, taken along with the additional finding by Dr. Rose that when Plaintiff was in cosmetology school she "did not demonstrate the social skills or cognitive flexibility to perform the duties required of a cosmetologist," actually "shows that the ALJ's reasoning supported her conclusion that Plaintiff should be limited to simple, repetitive work" because the occupation of cosmetologist is identified in the Dictionary of Occupational Titles (DOT) as semi-skilled work. "Thus, Dr. Rose's finding that Plaintiff would not be capable of semi-skilled employment was consistent with the ALJ's conclusion that Dr. Rose's opined functional limitations were also supportive of her finding that Plaintiff would be limited to simple, repetitive tasks such as those typical of unskilled activity." (Doc. No. 27 at 18). However, Defendant's argument, ostensibly based on a "review of [Dr. Rose's opinion] as a whole and in context," fails to consider the additional findings by Dr. Rose, including: marked differences from other adults in social and communicative behavior; limited capacity for relationships and frequently misperceives social cues; not being fully independent even when she performs household tasks; and needing considerable support from co-workers, supervisors, job-coaches, and others to manage typical responsibilities involved in employment. (AR 945). Again, the Court finds the ALJ erred by failing to explicitly reject these limitations or incorporate them into the assessed RFC.

Finally, the reviewing court cannot consider an error harmless unless it "can confidently conclude that no reasonable ALJ, when fully crediting the [evidence], could have reached a different disability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). Here, the vocational expert testified that there would not be competitive work available for an individual of the claimant's age, education, and work history if they could only perform simple, routine tasks, and needed "frequent supervision throughout the day to remain on task." (AR 80-82). Because the ALJ failed to consider limitations assessed by Dr. Rose, including not being fully independent even performing household tasks and needing support from others to manage employment, the Court cannot confidently conclude that the disability determination would remain the same were the ALJ to fully credit Dr. Rose's opinion. When the

ALJ improperly ignores significant and probative evidence in the record favorable to a claimant's position, the ALJ "thereby provide[s] an incomplete . . . [disability] determination." *Hill*, 698 F.3d at 1161; *see also Vincent*, 739 F.2d at 1394-95. Based on the foregoing, the Court finds the ALJ erred by failing to explicitly reject limitations opined by Dr. Rose or incorporate them in the assessed RFC. On remand, the ALJ must reconsider Dr. Rose's opinion along with the relevant opinion evidence.

### B. Symptom Claims

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)). Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however,

Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons. (AR 53).

First, the ALJ found Plaintiff's "presentation at the hearing was not as persuasive as she appeared to be unable to answer basic questions about her background and the effects of her impairments, but was able to adequately articulate this information to various examiners. Thus, I found her presentation to be less than fully sincere." (AR 59). Plaintiff argues the "ALJ erroneously and harmfully applied the 'sit and squirm' method of deciding the authenticity of [Plaintiff's] symptomology." (Doc. No. 19 at 26). Plaintiff is correct that an ALJ's reliance on personal observations of a claimant at the hearing "has been condemned as 'sit and squirm' jurisprudence." *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985) (citation omitted). The practice has generally been met with disapproval and may not form the sole basis for discounting a claimant's symptom claims. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). However, where, as here, the ALJ's finding is not based solely on observations made at the hearing, the "inclusion of the ALJ's personal observations does not render the decision improper." *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

That said, Plaintiff additionally argues that this reasoning is not clear and convincing because the ALJ relies on Plaintiff's ability to "adequately articulate" information to other providers as evidence she was "less than fully sincere" when she "appeared to be unable to answer basic questions" at the hearing. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (ALJ may consider inconsistent statements by a Plaintiff when assessing her symptom claims). In support of this argument, Plaintiff cites Dr. Rose's observation that Plaintiff repeatedly asked for clarification regarding open ended questions and her intelligence and ability for abstraction "appeared limited"; provider notes in July 2016 that "overall the obtaining of history was difficult, with conflicting information provided by [Plaintiff] and her mother and frequent interruption of the train of thought and conversation."; and observations throughout the record that Plaintiff could not remember or retain information (Doc. No. 19 at 27 (citing AR 640,

12

876, 943). Based on the foregoing, the Court finds the ALJ's finding that Plaintiff was "less than fully sincere" at the hearing, was not a clear and convincing reason, supported by substantial evidence, to reject her symptom claims regarding intellectual functioning.

Second, the ALJ found that "the record also reflects the sentiment that [Plaintiff] does very little during a typical day because she feels she can and others will tend to the household duties. [Plaintiff] does not appear very motivated to work as vocational training has been recommended to improve her basic work skills, and she has not pursued this course." (AR 59). An ALJ may draw reasonable inferences regarding a claimant's motivation to work. *See Tommasetti*, 533 F.3d at 1040. Here, however, the ALJ fails to cite any evidence of a "sentiment" in the record that Plaintiff does "very little during a typical day because she feels she can." *See Holohan*, 246 F.3d at 1208 (the ALJ must specifically identify the symptom claims she or he finds not to be credible and must explain what evidence undermines the testimony). Rather, as noted by Plaintiff, the record includes "documentation of [Plaintiff's] desire to work," including Dr. Rose's finding that Plaintiff is described as having "excellent work habits, conduct, and attitude toward studies." (AR 944). Plaintiff "self-referred" to Dr. Rose with the stated intention to "know her intellectual capacity to help her as she seeks employment and help her determine if there is support that may help her in those efforts." (AR 943). Moreover, the ALJ fails to cite any evidence from the record that Plaintiff is unable to tend to household chores without assistance due to lack of motivation as opposed to her claimed intellectual limitations. *Cf.* AR 83 (she needed "a lot of help" in school), 88, 90 (gets reminders for medications), 95, 99-101 (forgets where to put laundry, leaves food unattended on the stove, and never leaves the house alone), 103. Finally, while the ALJ's finding that Plaintiff has not pursued vocational training is relevant in considering her symptom claims, the ALJ fails to reconcile Dr. Rose's additional finding that it "may be difficult" for Plaintiff to receive appropriate services and that "[i]ndividuals with similar diagnoses [to Plaintiff's] require significant support in order to perform the responsibilities required in typical employment." (AR 945-46). Overall, the Court finds the ALJ's rejection of Plaintiff's symptom claims based on a general "lack of motivation" to work is not clear, convincing, and supported by substantial evidence.

Third, and finally,[5] the ALJ noted that Plaintiff's "activities and achievements are at least commensurate with simple, unskilled work." (AR 59). A claimant need not be utterly incapacitated in order to be eligible for benefits. *Fair*, 885 F.2d at 603; *see also Orn*, 495 F.3d at 639 ("the mere fact that a plaintiff has carried on certain activities . . . does not in any way detract from her credibility as to her overall disability."). Regardless, even where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. In support of this finding, the ALJ cites Plaintiff's "ability to obtain a high school diploma with only partial assistance or accommodation through special education programs"; that she obtained a driver's license "which requires the capacity to study and memorize information as well as recall this information for testing"; and her ability to do household chores, take care of her dog, shop in stores, and prepare simple meals. (AR 59). However, the ALJ fails to consider whether these activities, as actually performed by Plaintiff, are inconsistent with her reports that she is to do most of them without assistance or accommodation due to her cognitive limitations. Thus, particularly in light of the need to remand to reconsider the medical opinion evidence, and the lack of support for the additional reasons given to discount Plaintiff's symptom claims as discussed above, the ALJ should reconsider Plaintiff's symptom claims on remand.

**C. Additional Assignments of Error**

Plaintiff additionally challenges the ALJ's findings at step two and step three, and the rejection of the lay witness testimony of Plaintiff's sister and mother. (Doc. No. 19 at 20-24, 29-30). Because the analysis of Plaintiff's alleged cognitive impairments and the lay witness

---

[5] Defendant also notes that the ALJ noted Plaintiff had not sought treatment for anxiety "other than medications, which she states improves her symptoms." (Doc. No. 27 at 6). The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits) (internal citations omitted); *see also Tommasetti*, 533 F.3d at 1040 (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). However, the Court finds it was not a clear and convincing reason to reject Plaintiff's claimed cognitive limitations.

evidence is dependent on the ALJ's reevaluation of Plaintiff's symptom claims and the medical evidence, including the examining opinion of Dr. Rose as discussed above, the Court declines to address these challenges in detail here. On remand, the ALJ is instructed to reconsider Plaintiff's symptom claims, the medical opinion evidence, the lay witness statements, and conduct a new sequential analysis, including a reassessment of the step five finding if necessary.

## VIII.  CONCLUSION

The Court finds that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, the ALJ improperly considered the medical opinion evidence and Plaintiff's symptom claims, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence. On remand, the ALJ should reconsider the medical opinion evidence, and provide legally sufficient reasons for evaluating the opinions, supported by substantial evidence. In addition, the ALJ should reconsider Plaintiff's symptom claims, and the remaining steps in the sequential analysis, reassess Plaintiff's RFC, and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

Accordingly, it is **ORDERED**:

1. Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSES the Commissioner's decision and REMANDS this case back to the Commissioner of Social Security for further proceedings consistent with this Order.

2. An application for attorney fees may be filed by separate motion.

3. The Clerk shall terminate any motions and deadlines and close this case.

Dated:   February 8, 2022

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE